UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JAMES CARLOCK, on behalf of himself and all others similarly situated,<br><br>　　Plaintiff,<br><br>v.<br><br>CITY OF HARPER WOODS, et al.,<br><br>　　Defendants. | Case No. 24-cv-11122<br><br>Honorable Robert J. White |

**OPINION AND ORDER GRANTING WAYNE COUNTY'S MOTION TO PARTIALLY DISMISS THE COMPLAINT**

I.　Introduction

　　James Carlock commenced this putative 42 U.S.C. § 1983 class action against, among others, Wayne County after the county sheriff detained him, before trial, pursuant to a state district court order imposing unlawful bond conditions.

　　Before the Court is Wayne County's motion to dismiss the claims asserted against it in the complaint. (ECF No. 11). Carlock responded in opposition. (ECF No. 14). Wayne County filed a reply. (ECF No. 15). The Court will decide the motion without a hearing pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, the motion is granted.

II.     Background

    A.     *Factual History*

Harper Woods detectives arrested Carlock in July 2021 after he allegedly doused his then-girlfriend with gasoline and lit her arm on fire. (ECF No. 1, PageID.9-10, 13, ¶¶ 21, 26, 40). The Wayne County Prosecutor's Office charged him with, among other things, assault with intent to murder. (*Id.*, PageID.15, ¶ 49; ECF No. 11-2, PageID.155). Carlock pleaded not guilty at his arraignment. (ECF No. 1, PageID.18, ¶ 58; ECF No. 11-2, PageID.55). 32A District Court Chief Judge Rebekah Coleman set a secured cash bond condition in the amount of $150,000. (ECF No. 1, PageID.18, ¶ 61; ECF No. 11-3, PageID.159). Carlock asserts that Chief Judge Coleman never evaluated his financial "ability to post a bond," his risk of flight, whether he posed an unreasonable risk of danger to the community, or whether "non-financial" conditions would ameliorate these risks. (ECF No. 1, PageID.19, 22, ¶¶ 64, 79).

Chief Judge Coleman retained the secured cash bond conditions after binding Carlock over to the Wayne County Circuit Court. (*Id.*, PageID.19, ¶ 67). The state circuit court maintained those bond conditions pending trial. (*Id.*, ¶ 68).

A jury acquitted Carlock of all the charged offenses on September 28, 2023 after a four-day trial. (*Id.*, PageID.21, ¶ 75; ECF No. 11-2, PageID.157). By that

2

time, he had spent over two years in pretrial detention at the Wayne County Jail because he could not afford to post bond. (ECF No. 1, PageID.21, 26, ¶¶ 76, 95-96).

    B.    *Procedural History*

Carlock filed this 42 U.S.C. § 1983 lawsuit alleging both individual and putative classwide causes of action. The individual claims are asserted solely against the City of Harper Woods and the police officers who arrested Carlock and investigated the charged offenses. (*Id.*, PageID.49-61, ¶¶ 153-214).

The classwide claims are asserted against Wayne County and 32A District Court. Carlock contends that Chief Judge Coleman's bail orders violate the Fourteenth Amendment's Equal Protection Clause, as well as substantive and procedural due process guarantees, because she fails to make an individualized determination about each defendant's ability to pay bail, their risk of flight and danger to the community, and whether any non-financial conditions would address these risks. (*Id.*, PageID.22, 24-25, 62-70, ¶¶ 79, 88-90, 215-38). He also maintains that Wayne County violated these same constitutional rights when Sheriff Rafael Washington detained him, and other similarly situated pretrial detainees, pursuant to Chief Judge Coleman's unlawful bail orders. (*Id.*, PageID.63-64, 66-68, ¶¶ 218, 223, 228, 233).

Wayne County now moves to dismiss these classwide claims on the grounds that (1) the Eleventh Amendment to the United States Constitution bars Carlock from

3

recovering money damages against the County, and (2) Carlock lacks Article III standing to obtain any form of prospective injunctive relief. (ECF No. 11).

III. <u>Legal Standards</u>

Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action where the district court lacks subject matter jurisdiction. Rule 12(b)(1) motions for lack of subject matter jurisdiction may challenge either (1) the facial sufficiency of the pleading itself, or (2) the factual grounds for invoking subject matter jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Facial challenges address whether the pleading alleges a basis for subject matter jurisdiction. The Court views the pleading's allegations as true and construes them in the light most favorable to the nonmoving party. *Id.*

Whether a party has standing raises an issue of the Court's subject matter jurisdiction under Rule 12(b)(1). *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). The plaintiff, as the party invoking federal jurisdiction, carries the burden of establishing the elements of standing. *Ward v. Nat'l Patient Account Servs. Sols.*, 9 F.4th 357, 363 (6th Cir. 2021).

A similar analysis governs assertions of immunity under the Eleventh Amendment to the United States Constitution. "Dismissals under Eleventh Amendment immunity . . . come under Rule 12(b)(1), which covers dismissals for lack of subject-matter jurisdiction." *Crump v. Blue*, 121 F.4th 1108, 1113 (6th Cir.

4

2024) (quotation omitted); *see also WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 513 (6th Cir. 2021) (stating that Eleventh Amendment immunity "sounds in subject-matter jurisdiction."). And as with standing, the party "asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity, *i.e.*, that it is an arm of the state." *Lowe v. Hamilton County Dep't of Job & Family Servs.*, 610 F.3d 321, 324 (6th Cir. 2010) (quotation omitted); *see also Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002).

IV. <u>Analysis</u>

    A. *Eleventh Amendment Immunity – "Arm of the State"*

The Eleventh Amendment to the United States Constitution prohibits a suit brought in federal court against a state and its officials unless the state has expressly waived its sovereign immunity or unequivocally consented to be sued. U.S. Const. amend. XI; *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Cady v. Arenac County*, 574 F.3d 334, 342-43 (6th Cir. 2009). The State of Michigan has not waived its sovereign immunity or consented to be sued in federal court. *Johnson v. Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004); *see also Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

Damages actions against state officers in their official capacities are tantamount to lawsuits against the state and are precluded under the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also*

5

*Crabbs v. Scott*, 786 F.3d 426, 429 (6th Cir. 2015). Counties and their officers do not share these same protections. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *see also Crabbs*, 786 F.3d at 429.

But "law-enforcement officers sometimes wear multiple hats, acting on behalf of the county *and* the State." *Crabbs*, 786 F.3d at 429 (emphasis in original). And the way to assess the distinction "hinges on whether the officer represents the State in the 'particular area' or on the 'particular issue' in question." *Id.* (quoting *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 (1997)). "Where county officials are sued simply for complying with state mandates that afford no discretion, they act as an arm of the State" rather than the county. *Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th Cir. 1999); *see also Bowles v. Sabree*, No. 22-1912, 2024 U.S. App. LEXIS 8879, at *6-7 (6th Cir. Apr. 10, 2024).

In Michigan, county sheriffs draw their authority from the state's constitution. Mich. Const. art. VII, § 4 ("There shall be elected for four-year terms in each organized county a sheriff . . ."). Michigan law authorizes county sheriffs to take "charge and custody of the jails of his county, and of the prisoners in the same." Mich. Comp. Laws § 51.75. And it requires them to obey "any process of the court, or any lawful order of the court, or any lawful order of a judge of the court or of any officer authorized to perform the duties of the judge." Mich. Comp. Laws § 600.1701(c).

State district court judges play a different role. They possess the authority to impose bail and pretrial release conditions. *See* Mich Comp. Laws §§ 765.1(1); 765.6(1)-(2); Mich. Ct. Rule 6.106(A)-(F). In the event a defendant fails to meet or adhere to these conditions, the county sheriff *must* detain them pending trial or face judicial sanctions and, potentially, criminal penalties. *See* Mich. Comp. Laws §§ 600.1701(c); 750.189.

Because county sheriffs lack any discretion in this setting, they function as "an arm of the State" when incarcerating pretrial detainees who fail to meet their court-imposed bond conditions. *See McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 995 (6th Cir. 2019) (holding that a Tennessee county sheriff "acts for the State when he takes the challenged action, detaining probationers under judge-set bail amounts."); *see also Jones v. Hamilton Cnty. Sheriff*, 838 F.3d 782, 785 (6th Cir. 2016) (deciding that a county sheriff acted as an "arm of State" when transporting the plaintiff to the state department of corrections as mandated under state law). *Lindke v. King*, No. 19-11905, 2024 U.S. Dist. LEXIS 114869, at *16-17 (E.D. Mich. Jun. 28, 2024) (holding that a county sheriff acted as an "arm of the State" when Michigan law compelled him to enter the personal protective orders issued against the plaintiff into the LEIN system).

Sheriff Washington's conduct fits this same mold. The complaint alleges that Chief Judge Coleman imposed cash bond conditions at Carlock's arraignment

7

without considering his interest in pretrial liberty, his risk of flight, whether he posed an articulable danger to the community, or whether non-financial conditions would adequately protect against these risks. (ECF No. 1, PageID.18-19, 22, ¶¶ 61, 64, 79). And it asserts that Sheriff Washington detained Carlock at the Wayne County Jail, pursuant to Chief Judge Coleman's bail order, until he could either satisfy the imposed bond conditions or "the criminal proceedings against him [were] completed or dismissed." (*Id.*, PageID.26, ¶¶ 95-96; *see also id.*, PageID.63-64, 66-68, ¶¶ 218, 223, 228, 233). The complaint is devoid of any plausible allegations that Sheriff Washington may decide, *on his own*, whether to adhere to Chief Judge Coleman's bail orders – and with good reason. Michigan law bars him from exercising that type of discretion. *See* Mich. Comp. Laws §§ 600.1701(c); 750.189. So Sheriff Washington acted as an "arm of the State" when he detained Carlock pursuant to Chief Judge Coleman's bail order.

What does this all mean for Wayne County? Sheriff Washington, after all, is not a party to this suit. Carlock is instead suing his employer, the County.

The general rule is that a county official "being sued in his official capacity" is "liable to the same extent as [the employing] municipality . . . under § 1983." *Gottfried v. Medical Planning Servs.*, 280 F.3d 684, 692 (6th Cir. 2002); *see also Earnest v. Genesee Cty.*, 841 F. App'x 957, 962 (6th Cir. 2021) ("An official capacity claim against an officer is simply an alternative means of pleading a cause of action

8

against a municipality."). "[M]unicipalities may be held liable for the constitutional violations of their employees only where the *municipality's* policy or custom led to the violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (emphasis added).

The analysis changes when the official is performing functions as an "arm of the State." Under those circumstances, section 1983 liability cannot be imputed to the official's employing municipality because he is acting on behalf of the state, not the municipality. *See, e.g., McDaniel v. S. Corr. Med. LLC*, No. 24-10722, 2024 U.S. App. LEXIS 25628, at *8 (11th Cir. Oct. 11, 2024) (holding that "[b]ecause Sheriff Talton acted as an arm of the state in providing medical care, it follows that Houston County is also not liable" under *Monell*); *Black Lives Matter-Stockton Chapter v. San Joaquin Cty. Sheriff's Office*, 398 F. Supp. 3d 660, 671 (E.D. Cal. 2019) (dismissing municipal liability claims against a county and the county sheriff's office because "all claims against them arise out of" the individual officers' "conduct as state actors."); *Lepping v. Cty. of Mercer*, No. 18-2118, 2018 U.S. Dist. LEXIS 181563, at *20-21 (D.N.J. Oct. 23, 2018) ("having found that the [county prosecutor's office] is an arm of the state for Eleventh Amendment purposes, this Court need not analyze whether Plaintiff has sufficiently plead [*sic*] a claim of *Monell* liability against" that office) (internal quotation marks omitted).

9

Since the Court has already concluded that Sheriff Washington acted as an "arm of the State" when he detained Carlock pursuant to Chief Judge Coleman's bail order, Wayne County cannot be subject to municipal liability (whether for money damages or prospective injunctive relief) based upon that same conduct. *Cf. Shelton v. Wallace*, No. 95-3552, 1996 U.S. App. LEXIS 22252, at *7-8 (6th Cir. Jul. 30, 1996) (holding that the "policy of enforcing state court orders, even if we assume that those orders may from time to time be erroneous, cannot be an unconstitutional [municipal] policy.").

    B.    *Article III Standing – Prospective Injunctive Relief*

Even if Carlock could sue Wayne County for money damages under a municipal liability theory, he cannot obtain prospective injunctive relief on his classwide equal protection and due process claims because he lacks Article III standing.

The Fourteenth Amendment to the United States Constitution prohibits states from "denyin[g] to any person within [their] jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It also forbids them from "depriv[ing] any person of life, liberty, or property, without due process of law." *Id.* Section 5 to the Fourteenth Amendment empowers Congress to "enforce this article through appropriate legislation." *Id.* at § 5. Congress enacted 42 U.S.C. § 1983 pursuant to its power under section 5 to enforce the Amendment's substantive provisions. *See*

*Ngiraingas v. Sanchez*, 495 U.S. 182, 187 (1990). The statute precludes state and local officials from depriving "citizen[s] of the United States . . . of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

Yet, "[n]o matter what Congress provides by statute, the plaintiff must still satisfy" the federal constitution's Article III "standing prerequisites." *Buchholz v. Tanick*, 946 F.3d 855, 867 (6th Cir. 2020). Article III of the United States Constitution limits federal court jurisdiction to actual cases or controversies. U.S. Const. art. III, § 2. The doctrine of standing emanates from this "case-or-controversy" requirement and "limits the category of litigants empowered to maintain a lawsuit in federal court to [those who] seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Requests for prospective injunctive relief are not exempt from Article III's "case-or-controversy" requirement. *See WCI*, 18 F.4th at 515-16 ("because WCI has not alleged in the complaint that any future Eighth Amendment violation is 'certainly impending,' it has not established an injury sufficient to establish Article III standing.").

Since this case is at the pleading stage, Carlock must "clearly . . . allege facts demonstrating" (1) an imminent, concrete, and particularized injury-in-fact, that (2) is traceable to Wayne County's conduct, and (3) can be redressed through a favorable judicial decision. *Spokeo*, 578 U.S. at 338 (quotation omitted); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

11

Insofar as Carlock seeks prospective injunctive relief against Wayne County, he lacks Article III standing because his purported injuries are neither imminent nor traceable to the County's policies, custom, or practices. (ECF No. 1, PageID.70, ¶ 238(d)).

    1.    Imminence

Injuries are "imminent" for Article III standing purposes when they are "certainly impending." *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 981-82 (6th Cir. 2020). The United States Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up) (emphasis in original).

Carlock's injuries are too far-fetched to be "certainly impending." Think about all the contingencies that must align for Carlock to meet this threshold. He would have to show a compelling likelihood that (1) he will be arrested for an unlawful act sometime in the future, (2) the unlawful act will occur within the 32A District Court's territorial jurisdiction, (3) he will be arraigned again before Chief Judge Coleman, (4) her bail determination will suffer from the same substantive and procedural defects alleged in this litigation, and (5) Carlock will be unable to meet the imposed bond conditions, resulting in his pretrial detention in the Wayne County Jail.

12

But "attempting to anticipate whether and when" Carlock "will be charged with a crime and will be made to appear before" Chief Judge Coleman is exactly the type of "speculation and conjecture" the Supreme Court cautions federal courts to avoid. *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974). This Court must instead "assume" that Carlock "will conduct [his] activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct." *Id*. While "past may be precedent," as the Sixth Circuit has observed, historically "the Supreme Court has not been sympathetic to claims that past occurrences of unlawful conduct create standing to obtain an injunction against the risk of future unlawful conduct." *Shelby Advocates*, 947 F.3d at 981; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983) (holding that a previous, discrete incident of police excessive force "does nothing to establish a real and immediate threat" of future misconduct). Carlock's allegations are no exception.

    2.    Traceability

Another hurdle is traceability. Traceability, at the pleading stage, requires clear allegations that "the injury was likely caused by the defendant." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

Here, the complaint does not identify any Wayne County policies, practices or customs that could even remotely harm Carlock in the future. And insofar as Carlock maintains that Wayne County "tacitly approve[s]" of Chief Judge

13

Coleman's bail orders, since it "fail[s] to prevent the unconstitutional pretrial detention of indigent arrestees," his position conflicts with the Court's previous "arm of the State" determination. (ECF No. 1, PageID.68, ¶ 235).

Recall that Sheriff Washington functions as an "arm of the State" when incarcerating pretrial detainees who fail to meet their court-imposed bond conditions. *See supra* Section IV.A.  He must enforce Chief Judge Coleman's bail orders by operation of law.  This command stems from Michigan's legislature, not Wayne County's policies, practices, or customs.  *See* Mich. Comp. Laws §§ 600.1701(c); 750.189.  As a result, Carlock's injuries are not only speculative, they are also not discernably traceable to Wayne County.[1]

    3.    Carlock's Response

Recognizing these pitfalls, Carlock advances two independent grounds to bolster his Article III standing.  *First*, he argues that his injuries are imminent because he currently endures "continuing, present adverse effects" stemming from his past incarceration at the Wayne County Jail. (ECF No. 14, PageID.227) (citing *O'Shea*, 414 U.S. at 495-96).  Carlock lists these injuries as "severe and serious

---

[1] Carlock's class allegations cannot rehabilitate the deficiencies in his own Article III standing. *See Fox v. Saginaw County*, 67 F.4th 284, 297 (6th Cir. 2023) (holding that "a class-action request 'adds nothing' to a plaintiff's standing."); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) (same); *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40, n.20 (1976) (same); *In re E.I. du Pont de Nemours*, 87 F.4th 315, 319 (6th Cir. 2023) (same).

emotional distress, embarrassment, humiliation, and anxiety" and an inability "to secure long term employment." (*Id.*; *see also* ECF No. 1, PageID.34, ¶ 115).

The problem for Carlock is that the Supreme Court rejected this argument in *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983). There, the Court expressly held that, while "emotional upset is a relevant consideration in a damages action," the "emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant." *Id.*; *see also Hange v. City of Mansfield*, 257 F. App'x 887, 891 (6th Cir. 2007) (holding that "the mere subjective fear that a plaintiff will be subjected again to an allegedly illegal action is not sufficient to confer standing."). Nor does Carlock explain how issuing injunctive relief against Wayne County *at this juncture* would in any way redress the emotional injuries sustained during his *previous* incarceration, which concluded in September 2023. (ECF No. 1, PageID.21, ¶ 75).

*Second*, Carlock contends that his injuries fall within the "inherently transitory" exception to Article III's *mootness* doctrine. (ECF No. 14, PageID.227-28). Article III mootness and Article III standing, however, are not the same thing.

"Standing is determined at the time the complaint is filed." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 559 (6th Cir. 2021). Mootness must be assessed at every stage of the litigation. *See Patton v. Fitzhugh*, 131 F.4th 383, 391-92 (6th Cir. 2025). The basic distinction between the two concepts is that "standing

15

concerns only whether a plaintiff has a viable claim that a defendant's unlawful conduct was occurring at the time the complaint was filed, while mootness addresses whether that plaintiff continues to have an interest in the outcome of the litigation." *Id.* at 391 (quotation omitted); *see also Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 525 (6th Cir. 2001). So "if a plaintiff possesses standing from the start, later factual changes cannot deprive the plaintiff of standing. Those changes instead will create 'mootness' issues and trigger that doctrine's more forgiving rules." *Patton*, 131 F.4th at 392 (quotation omitted); *see also Fox*, 67 F.4th at 295.

The "inherently transitory" exception to Article III mootness is a "strain of the capable-of-repetition-yet-evading-review doctrine applied to class action claims." *Patton*, 131 F.4th at 393 (internal quotation marks omitted). It comprises two elements: (1) the injury must be so transitory that it would likely evade review by becoming moot before the district court rules on class certification, and (2) it must be certain that other putative class members are suffering the same injury. *Patton*, 131 F.4th at 396; *see also Wilson v. Gordon*, 822 F.3d 934, 945 (6th Cir. 2016).

Applying the exception, though, presupposes that Article III standing existed at the inception of the litigation – something Carlock never possessed. So his reliance on the "inherently transitory" exception to Article III mootness cannot possibly salvage his lack of Article III standing at the outset of the case. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000)

(ruling that "if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum."); *see also Fox*, 67 F.4th at 297 ("Standing has no similar 'capable of repetition yet evading review' exception.").[2]

Because Carlock's injuries are neither imminent nor traceable to Wayne County's policies, practices or customs, he lacks the necessary standing to obtain prospective injunctive relief against the County. Accordingly,

IT IS ORDERED that Wayne County's motion to partially dismiss the complaint (ECF No. 11) is granted.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to terminate Wayne County from the docket as a party defendant to this action.

---

[2] Carlock references *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991 (6th Cir. 2019) in his response brief. (ECF No. 14, PageID.222-23). Although *McNeil* tracks the claims asserted in this litigation closely, and the Sixth Circuit affirmed the issuance of a preliminary injunction in that case, the key difference is that at least one of the class representatives in *McNeil* possessed Article III standing while Carlock does not. *See McNeil v. Cmty. Prob. Servs., LLC*, No. 18-00033, 2019 U.S. Dist. LEXIS 24357, at *7 (M.D. Tenn. Feb. 14, 2019) (indicating that one of the class representatives had yet to be arrested on an already issued violation-of-probation warrant).

Dated: July 2, 2025                  <u>s/ Robert J. White</u>
                                                    Robert J. White
                                                    United States District Judge